**UNITED STATES DISTRICT COURT**

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____ 5322 Hedge Street, Philadelphia, Pa

Address of Defendant: _____ 1515 Arch Street, Philadelphia, Pa

Place of Accident, Incident or Transaction: _____ 3500 N. Marvine Street, Philadelphia, Pa

---

***RELATED CASE, IF ANY:***

Case Number: **15-1471**    Judge: **Diamond**    Date Terminated: _____

Civil cases are deemed related when ***Yes*** is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?    Yes ☐    No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?    Yes ☐    No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?    Yes ☐    No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?    Yes ☐    No ☑

I certify that, to my knowledge, the within case ☑ **is** / ☐ **is not** related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 4/15/2020    _____ *Michael Pileggi*    61558
    *Attorney-at-Law / Pro Se Plaintiff*    *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

**A.    *Federal Question Cases:***

☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
☐ 2. FELA
☐ 3. Jones Act-Personal Injury
☐ 4. Antitrust
☐ 5. Patent
☐ 6. Labor-Management Relations
☑ 7. Civil Rights
☐ 8. Habeas Corpus
☐ 9. Securities Act(s) Cases
☐ 10. Social Security Review Cases
☐ 11. All other Federal Question Cases
    *(Please specify):* _____

**B.    *Diversity Jurisdiction Cases:***

☐ 1. Insurance Contract and Other Contracts
☐ 2. Airplane Personal Injury
☐ 3. Assault, Defamation
☐ 4. Marine Personal Injury
☐ 5. Motor Vehicle Personal Injury
☐ 6. Other Personal Injury *(Please specify):* _____
☐ 7. Products Liability
☐ 8. Products Liability – Asbestos
☐ 9. All other Diversity Cases
    *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, _____, counsel of record *or* pro se plaintiff, do hereby certify:

☐ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐ Relief other than monetary damages is sought.

DATE: _____    _____ *Sign here if applicable*    _____
    *Attorney-at-Law / Pro Se Plaintiff*    *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)

JS 44 (Rev. 02/19)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
MICHAEL McCLARY

### DEFENDANTS
CITY OF PHILADELPHIA, et al.

**(b)** County of Residence of First Listed Plaintiff    PHILADELPHIA
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    PHILADELPHIA
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ❏ 1   U.S. Government Plaintiff
- ☒ 3   Federal Question *(U.S. Government Not a Party)*
- ❏ 2   U.S. Government Defendant
- ❏ 4   Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☒ 1 | Incorporated *or* Principal Place of Business In This State | ❏ 4 | ❏ 4 |
| Citizen of Another State | ❏ 2 | ❏ 2 | Incorporated *and* Principal Place of Business In Another State | ❏ 5 | ❏ 5 |
| Citizen or Subject of a Foreign Country | ❏ 3 | ❏ 3 | Foreign Nation | ❏ 6 | ❏ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ❏ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ❏ 625 Drug Related Seizure of Property 21 USC 881 | ❏ 422 Appeal 28 USC 158 | ❏ 375 False Claims Act |
| ❏ 120 Marine | ❏ 310 Airplane | ❏ 365 Personal Injury - Product Liability | ❏ 690 Other | ❏ 423 Withdrawal 28 USC 157 | ❏ 376 Qui Tam (31 USC 3729(a)) |
| ❏ 130 Miller Act | ❏ 315 Airplane Product Liability | ❏ 367 Health Care/ | | | ❏ 400 State Reapportionment |
| ❏ 140 Negotiable Instrument | ❏ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ❏ 410 Antitrust |
| ❏ 150 Recovery of Overpayment & Enforcement of Judgment | ❏ 330 Federal Employers' | Product Liability | | ❏ 820 Copyrights | ❏ 430 Banks and Banking |
| ❏ 151 Medicare Act | Liability | ❏ 368 Asbestos Personal Injury Product Liability | | ❏ 830 Patent | ❏ 450 Commerce |
| ❏ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ❏ 340 Marine | | | ❏ 835 Patent - Abbreviated New Drug Application | ❏ 460 Deportation |
| | ❏ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ❏ 840 Trademark | ❏ 470 Racketeer Influenced and Corrupt Organizations |
| ❏ 153 Recovery of Overpayment of Veteran's Benefits | ❏ 350 Motor Vehicle | ❏ 370 Other Fraud | ❏ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ❏ 480 Consumer Credit |
| ❏ 160 Stockholders' Suits | ❏ 355 Motor Vehicle Product Liability | ❏ 371 Truth in Lending | ❏ 720 Labor/Management Relations | ❏ 861 HIA (1395ff) | ❏ 485 Telephone Consumer Protection Act |
| ❏ 190 Other Contract | ❏ 360 Other Personal Injury | ❏ 380 Other Personal Property Damage | ❏ 740 Railway Labor Act | ❏ 862 Black Lung (923) | ❏ 490 Cable/Sat TV |
| ❏ 195 Contract Product Liability | ❏ 362 Personal Injury - Medical Malpractice | ❏ 385 Property Damage Product Liability | ❏ 751 Family and Medical Leave Act | ❏ 863 DIWC/DIWW (405(g)) | ❏ 850 Securities/Commodities/ Exchange |
| ❏ 196 Franchise | | | | ❏ 864 SSID Title XVI | ❏ 890 Other Statutory Actions |
| | | | ❏ 790 Other Labor Litigation | ❏ 865 RSI (405(g)) | ❏ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ❏ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ❏ 893 Environmental Matters |
| ❏ 210 Land Condemnation | ☒ 440 Other Civil Rights | **Habeas Corpus:** | | ❏ 870 Taxes (U.S. Plaintiff or Defendant) | ❏ 895 Freedom of Information Act |
| ❏ 220 Foreclosure | ❏ 441 Voting | ❏ 463 Alien Detainee | | ❏ 871 IRS—Third Party 26 USC 7609 | ❏ 896 Arbitration |
| ❏ 230 Rent Lease & Ejectment | ❏ 442 Employment | ❏ 510 Motions to Vacate Sentence | | | ❏ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ❏ 240 Torts to Land | ❏ 443 Housing/ Accommodations | ❏ 530 General | | | |
| ❏ 245 Tort Product Liability | ❏ 445 Amer. w/Disabilities - Employment | ❏ 535 Death Penalty | **IMMIGRATION** | | ❏ 950 Constitutionality of State Statutes |
| ❏ 290 All Other Real Property | ❏ 446 Amer. w/Disabilities - Other | **Other:** | ❏ 462 Naturalization Application | | |
| | ❏ 448 Education | ❏ 540 Mandamus & Other | ❏ 465 Other Immigration Actions | | |
| | | ❏ 550 Civil Rights | | | |
| | | ❏ 555 Prison Condition | | | |
| | | ❏ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ❏ 2 Removed from State Court
- ❏ 3 Remanded from Appellate Court
- ❏ 4 Reinstated or Reopened
- ❏ 5 Transferred from Another District *(specify)*
- ❏ 6 Multidistrict Litigation - Transfer
- ❏ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. § 1983
Brief description of cause:
Police Misconduct

## VII. REQUESTED IN COMPLAINT:
❏ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes ❏ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE   Diamond     DOCKET NUMBER   15-1471

DATE   4/15/2020

SIGNATURE OF ATTORNEY OF RECORD

*Michael Pileggi*

**FOR OFFICE USE ONLY**

RECEIPT #     AMOUNT     APPLYING IFP     JUDGE     MAG. JUDGE

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

MICHAEL McCLARY                             :          CIVIL ACTION
                                            :
                    v.                      :
                                            :
CITY OF PHILADELPHIA, et al                 :          NO.

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

## SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.                    ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
    and Human Services denying plaintiff Social Security Benefits.                           ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.  ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
    exposure to asbestos.                                                                    ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
    commonly referred to as complex and that need special or intense management by
    the court.  (See reverse side of this form for a detailed explanation of special
    management cases.)                                                                       ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.           (✓)

_4/15/2020_                  _Michael Pileggi_                  _Plaintiff_
**Date**                     **Attorney-at-law**               **Attorney for**

_215-627-8516_               _215-627-5105_                     _PILA423@AOL.COM_
**Telephone**                **FAX Number**                     **E-Mail Address**

(Civ. 660) 10/02

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MICHAEL McCLARY** | : |
| **Plaintiff** | : **JURY TRIAL** |
| **vs.** | : **DEMAND** |
| **THE CITY OF PHILADELPHIA, PHILADELPHIA** | : |
| **POLICE OFFICER CHRISTOPHER HULMES,** | : **C.A. NO. 20-** |
| **BADGE # 7548; PHILADELPHIA POLICE** | : |
| **OFFICERS DOE 1-3, BADGE # UNKNOWN,** | : **LEAD DOCKET** |
| **Individually and in their capacity as police officers** | : **NO. 15-1471** |
| **Defendants** | : |

### COMPLAINT

### I. PRELIMINARY STATEMENT

1. Before his conviction was reversed, Michael McClary spent 6 months house arrest, 12 months on IPP and 2 years' probation for narcotic related offenses that he did not commit.

2. Mr. McClary who has maintained his innocence from the inception fought the charges from the date of his arrest on March 4, 2011 until his case was reversed on February 28, 2020.

3. Due to the fabrication of evidence and testimony by the Defendant police officers, a jury found Mr. McClary was forced to plead guilty to narcotic related offenses and he was eventually sentenced by the Court to 6 months of house arrest, 12 months IPP followed by another 2 years for a probation violation involving the subject matter arrest and prosecution.

4. This miscarriage of justice was the direct result of the egregious misconduct by the Defendant police officers of the Philadelphia Police Department. In particular, in order to make their case against Mr. McClary, Defendants fabricate and

misrepresented the information provided to authorities and in Court under oath which was used as a basis for probable cause to arrest and prosecute the Plaintiff.

5. This action arises under 42 U.S.C. § 1983 for claims involving the malicious prosecution of Mr. McClary by the Defendants.

6. It involves police misconduct by the individual Defendants, in particular, the unlawful actions of the arresting Police Officer in this case – Christopher Hulmes, as well as the actions or inactions of Officer Hulmes' fellow police officers.

7. On April 23, 2015, after the conviction of Plaintiff, Christopher Hulmes was himself arrested and charged with perjury, false swearing, false reports, tampering with public records and unsworn falsification to authorities.

8. Defendant Hulmes' arrest emanated from a December 2011 hearing in which Defendant Hulmes admitted to lying under oath in a drug and gun case against the Defendant in the case of *Commonwealth v. Rowland*, CP-51-CR-0007188-2010.

9. Despite this revelation, the Philadelphia District Attorney's Office concealed this fact and failed to turn over this evidence of police misconduct to defense attorneys until the matter was exposed in the media.

10. The Philadelphia District Attorney's Office continued to use Defendant Hulmes in the prosecution of criminal cases until his arrest in April 2015.

11. On June 17, 2016, Defendant Hulmes plead guilty to perjury, tampering with public record, obstruction of administration of law, false swearing, unsworn falsification to authorities and false reporting charges. Defendant Hulmes received the Accelerated Rehabilitative Disposition (ARD) conviction.

12. Plaintiff now brings this action under 42 U.S.C. §1983 seeking redress for the extraordinary misconduct of a Philadelphia police officer who used improper and unconstitutional means to secure search warrants by deception and misrepresentation, search persons and property, and subject citizens to unlawful arrest, detention and prosecution.

13. Further, as detailed below, Mr. McClary's wrongful conviction was the direct result of the unconstitutional and otherwise improper policies, practices, and customs of the Philadelphia Police Department, including all the Narcotics Units, which for a period starting as early as the 1980's and continuing through the investigation and arrest in this case and for years thereafter, evidences deliberate indifference by the Defendant City of Philadelphia to practices of fabrication of evidence, suppression of exculpatory evidence, and abuse of authority.

**II. JURISDICTION**

14.  This action is brought pursuant to 42 U.S.C. §§ 1331 and 1343(1), (3), (4) and the aforementioned statutory provision.

**III. PARTIES**

15. Plaintiff, Michael McClary is an adult male who was at all times relevant to its Complaint, a resident of Philadelphia, Pennsylvania.

16. Defendant City of Philadelphia is a City of the First Class in the Commonwealth of Pennsylvania and at all times relevant hereto operated under the color of state law in creating and maintaining a Police Department, was the employer of all Defendants and had the responsibility of adopting policies, implementing

procedures and practices which would create an environment whereby citizens would be safe from police abuse.

17. Defendant Hulmes, Badge number 7548, is and was at all times relevant to this Complaint, a police officer for the City of Philadelphia and acting under the color of state law. He is being sued in both his individual and official capacities.

18. Defendant Does 1-3, Badge numbers unknown, are and were at all times relevant to this Complaint, police officers for the City of Philadelphia and acting under the color of state law. They are being sued in both their individual and official capacities.

## IV. FACTS

19. For more than twenty years, Philadelphia police officers assigned to various narcotics units have engaged in a pattern and practice of securing search warrants based on fraud and misrepresentation, the misuse of informants, the improper execution of search warrants, the falsification of evidence, the destruction and theft of personal property, and related misconduct.

20. The City of Philadelphia has failed to take appropriate remedial measures to prevent misconduct of this nature.

21. On March 4, 2011, some and/or all of the Defendant Officers were engaged in purported narcotic trafficking surveillance around 3500 N. Marvine Street, Philadelphia Pennsylvania.

22. On or about that date, Defendant Hulmes claimed to have observed Plaintiff engage in a transaction of narcotics.

23. According to Defendant Hulmes, Plaintiff acted in concert with other individuals in that area who were involved in purported narcotic sales.

24. Plaintiff was arrested and charged with narcotic related offenses.

25. No narcotics were confiscated from Plaintiff.

26. The Defendant Officers and other officers all gave false statements concerning the incident described in the complaint.

27. Defendant Hulmes and other officers prepared and caused to be prepared police paperwork misrepresenting the events that led to the arrest of the Plaintiff for the incident described in this complaint. Those misrepresentations included, but were not limited to:

a. That they had probable cause to arrest the Plaintiff;

b. That Plaintiff possessed narcotics; and

c. That Defendant Officers lied about the times of their activities; the times indicated in their reports of events which did not occur; this was done to conceal their illegal activities.

28. Defendant Officers were aware of exculpatory information about the Plaintiff.

29. The Defendant Officers failed to provide exculpatory information known to them to the Plaintiff or his criminal counsel via police paperwork or any other means after the arrest.

30. The exculpatory information known to police that was not provided to the Plaintiff included the real facts and circumstances of the incident.

31. The misrepresentations contained in the affidavit of probable cause, arrest report and property receipts were material to the probable cause determination of the arrest; indeed, without these allegations, the probable cause required for Plaintiff's arrest contain no cause or reason to warrant the arrest and/or prosecution.

32. All the Defendants provided prosecutors from the Philadelphia District Attorney's Office with false, misleading, and incomplete information regarding their investigation in this case in an effort to obtain the District Attorney's Office's approval for Mr. Cruz's prosecution.

33. Mr. McClary has maintained his innocence and adamantly denying any role in the crime. He denies his involvement in the possession of narcotics.

34. On June 20, 2011, Plaintiff plead guilty to narcotic related crimes. On August 9, 2011, the Court sentenced the Plaintiff to a term of 6 months house arrest, 12 months IPP and 2 years' probation.

35. In December 2011, Defendant Hulmes admitted in open court that he falsified information in a drug arrest. The presiding judge in that case dismissed all charges against the Defendant because Defendant Hulmes lied about the information he testified to in that case. *Commonwealth v. Rowland*, CP-51-CR-0007188-2010.

36. Despite this revelation that Defendant Hulmes falsified information under oath, the Philadelphia District Attorney's Office continued to use him as a witness in criminal cases over the course of the next 4 years.

37. In December 2013, the Philadelphia District Attorney's office again was alerted to the fact that Defendant Hulmes had provided false and misleading information regarding a prior narcotics investigation and arrest. This time, the person

providing the information was one of the Philadelphia District Attorney Office's own prosecutor. The Assistant Attorney informed his superiors that he was uncomfortable with eliciting testimony from Defendant Hulmes because of the prior admission that he lied under oath.

38. The District Attorney was summarily terminated from employment.

39. On April 23, 2015, Defendant Hulmes was arrested and charged on multiple counts of: perjury, false swearing, false reports, tampering with public records and unsworn falsification to authorities.

40. On June 17, 2016, Defendant Hulmes plead guilty to perjury, tampering with public record, obstruction of administration of law, false swearing, unsworn falsification to authorities and false reporting charges.

41. The Philadelphia District Attorney's Office agreed to the extraordinarily lenient deal by allowing Defendant Hulmes enter a pretrial diversion Program for first offenders.

42. On June 18, 2015, the Philadelphia Public Defender's Office filed a Post-Conviction Relief Act (PCRA) petition on behalf of Mr. McClary as a result of the Defendant Hulmes' arrest and conviction.

43. On February 28, 2020, after spending 6 months on house arrest, 12 months in the IPP program and 2 years' probation, upon review of the evidence in Plaintiff's criminal case and *without objection,* the Philadelphia District Attorney's Office agreed to *Nolle Prosse* Plaintiff's June 20, 2011 conviction.

44. By Court Order, Mr. McClary's conviction was overturned and reversed resulting in a favorable termination of the criminal proceedings against Mr. McClary

and thus ending the proceeding in his favor. See *Heck v. Humphrey*, 512 U.S. 477 (1994).

45. The Defendant officers, acting in concert and conspiracy, caused the Plaintiff to be arrested, subjected to false criminal charges, malicious prosecution and prolonged detention by falsifying information in the arrest report, the 75-49, and at the preliminary hearing; failing to disclose to prosecutors the fact that the information provided to the authorities in support of the arrest was false and misleading, the information in supporting police documents was false and misleading and his testimony at trial was false and misleading; fabricating evidence to support the claim that the Plaintiff was involved in criminal activity, and failing to disclose other exculpatory evidence regarding these criminal charges.

46. The only evidence leading to Plaintiff's conviction was derived from the false and misleading information provided by the Defendant Hulmes and/or other police officers.

47. For many years dating back at least to the 1980's, and continuing well beyond the time of the investigation, arrest and prosecution of Mr. McClary, the City of Philadelphia, had in force and effect a policy, practice, or custom of unconstitutional misconduct in the Narcotic's Units, including the Narcotics Strike Force, and in particular, fabricating inculpatory evidence and withholding exculpatory evidence.

48. This policy, practice, or custom of "articulating" (falsifying) information to create probable cause to arrest and prosecute individuals otherwise innocent of the

crime while concealing the police officers own improper and illegal conduct was pervasive.

49. This policy, practice, or custom also involved various techniques by Narcotics police officers to make false statements and testimony at trial appear true and reliable.

50. These practices were well known to the City of Philadelphia and its policymakers with respect to narcotics investigations and prosecutions as a result of newspaper investigations, prosecutors from the Philadelphia District Attorney's Office, governmental investigations, complaints from lawyers and civilians, internal police investigations and hundreds of lawsuits filed against police officers from various narcotics units.

51. Various cases demonstrate that this misconduct was pervasive within the Philadelphia Police Department at the time of Mr. McClary's arrest and prosecution, and upon information and belief, the misconduct described below was committed with the knowledge of Philadelphia Police Department supervisors or because of their deliberate indifference to this misconduct.

52. At the time of this incident, and for some years before, law enforcement at the highest levels knew of integrity, corruption, and civil rights violation issues involving Defendant Hulmes. Federal agents and federal prosecutors knew. The current Philadelphia Police Commissioner, his predecessors, and some of his subordinates knew. Former District Attorney Lynn Abraham and some of her subordinates, as well as her successor, former District Attorney Seth Williams knew. The basis of this knowledge was information from multiple sources including, but not

limited to, federal investigations, questions raised by state and federal prosecutors, judges and other sources.

53. The foregoing conduct of Defendant Hulmes, acting under the color of state law, was undertaken in concert and conspiracy and as part of an effort to maliciously prosecute and otherwise deprive Plaintiff of his civil and constitutional rights including Plaintiff's rights, privileges and immunities under the Fourth and Fourteenth Amendments to the United States Constitution and the laws of the Commonwealth of Pennsylvania.

54. Plaintiff did not commit any offenses against the laws of the Commonwealth of Pennsylvania, the United States or the City of Philadelphia, or engage in any conduct which justified the actions of all Defendants. Plaintiff maintained his innocence of the charges brought against him.

55. The detention and malicious prosecution in this case were the direct result of all Defendant Officers' pattern, practice and custom of subjecting citizens such as the Plaintiff to arrest, prosecution and incarceration in the absence of probable cause.

56. The Defendant officers acted willfully, deliberately, maliciously or with reckless disregard of the Plaintiff's constitutional and statutory rights.

57. As a direct and proximate result of the actions of all Defendant Officers, the Plaintiff suffered and continues to suffer physical and psychological harms, pain and suffering, damage to reputation, some or all of which may be permanent, as well as financial losses.

58. As a direct and proximate result of the actions of all Defendants Officers, the Plaintiff suffered his loss of liberty by being on house arrest for 6 months, IPP for 12 months and 2 years of probation.

59. All Defendant Officers engaged in the aforesaid conduct for the purpose of violating the Plaintiff's constitutional rights by subjecting the Plaintiff to malicious prosecution, and prolonged detention.

60. The actions and conduct of the Defendant Officers were caused by a policy, practice and custom of Defendant City of Philadelphia of failing, with deliberate indifference, to supervise, monitor, and properly train narcotics officers with respect to (a) their duty to provide only truthful information in securing search and arrest warrants, (b) their duty to ensure that relationships and dealings with confidential informants and/or sources are in accord with Police Department policy and constitutional commands, (c) their duty to disclose exculpatory evidence in criminal cases, (d) their duty not to undertake arrests in the absence of lawful grounds, (e) their duty to provide accurate and truthful information to the prosecutor's office, (f) their duty to report and disclose misconduct and illegal actions of other police officers, (g) the proper execution of search warrants and/or involve the destruction or theft of property or evidence, and (h) the fabrication of evidence against an accused to justify their illegal actions and conduct.

61. Defendant City of Philadelphia has failed to properly discipline Defendant Hulmes and other officers in the Police Department in cases involving violations of rights of civilians, including cases of improper searches, seizures, arrests, and prosecutions, thereby causing the violations in this case.

62. The above described actions of all of the Defendants caused the violations of the Plaintiff's rights under the Fourth and Fourteenth Amendment as alleged in this complaint.

## FIRST CAUSE OF ACTION
## FEDERAL CIVIL RIGHTS VIOLATIONS

63. The allegations set forth in paragraphs 1-62 inclusive, are incorporated herein as if fully set forth.

64. As a direct and proximate result of Defendants' above described unlawful and malicious conduct, committed under the color of state law, and while acting in that capacity, the Defendants deprived Plaintiff of his privileges and immunities under the laws and the Constitution of the United States. Plaintiff's right to be free from malicious prosecution and to be secure in one's person and property, all to Plaintiff's great detriment and loss. As a result, Plaintiff suffered grievous harm, in violation of his rights under the laws and Constitution of the United States in particular the Fourth and Fourteenth Amendments thereof, and 42 U.S.C. § 1983.

65. As a direct and proximate result of the acts and omissions of Defendants, Plaintiff was forced to endure great pain and mental suffering, and was deprived of physical liberty, all to Plaintiff's great detriment and loss.

66. The City of Philadelphia permitted, encouraged, tolerated, ratified and was deliberately indifferent to a pattern, practice and custom of:

    a. Unjustified, unreasonable and illegal use of process by police officers;
    b. Abuse of police powers, including malicious prosecution, harassment and improper searches;
    c. Misrepresenting facts in order to establish probable cause where none would otherwise exist;
    d. Arresting and incarcerating citizens without probable cause solely for the purpose of committing citizens to prison with no intention of

seeking criminal prosecutions;

   e. Psychologically or emotionally unfit persons serving as police officers; and

   f. Failure of police officers to prevent, deter, report or take action against the unlawful conduct of police officers, in particular those police officers who fabricate information and evidence used to prosecute citizens innocent of the crimes they are accused and prosecuted for.

67. Defendant City of Philadelphia has encouraged, tolerated, ratified and has been deliberately indifferent to the following patterns, practices and customs and to the need for more or different training, supervision, investigation or discipline in the areas of:

   a. Unlawful detentions, unlawful searches, unlawful arrests and prosecutions without probable cause by police officers;

   b. The proper exercise of police powers, including but not limited to the use of false information to obtain search warrants, fabrication of evidence, unlawful arrest, unlawful searches, malicious prosecution and unlawful detention;

   c. The monitoring of officers whom it knew or should have known were suffering from emotional and/or psychological problems that impaired their ability to function as officers;

   d. The failure to identify and take remedial or disciplinary action against police officers who were the subject of prior civilian or internal complaints of misconduct;

   e. Police officers' use of their status as police officers to employ the use of unlawful search and/or arrest, or to achieve ends not reasonably related to their police duties;

   f. Police officers' use of their status as police officers to employ the use of unlawful arrest, invoke the Code of Silence, or to achieve ends not reasonably related to police duties;

   g. The failure of police officers to follow established policies, procedures, directives and instructions regarding the securing of search warrants and the use of arrest powers under such circumstances as presented in this case;

   h. The refusal of police officers to intervene when other officers violate the rights of citizens in their presence;

   i. The failure to identify and take remedial or disciplinary action against units of officers assigned to narcotics investigations in light of repeated instances of misconduct over a period of many years as alleged in this Complaint; and

   j. The refusal of police officers to report or provide information concerning the misconduct of other police officers, a custom or practice known as the "Code of Silence."

68. Defendant City of Philadelphia failed to properly train, supervise or discipline officers assigned to narcotics units of the Philadelphia Police Department who have engaged over a period of many years in systematic abuses of authority, including but not limited to: (a) the duty to provide only truthful information in securing search and arrest warrants, (b) the duty to ensure that relationships and dealings with confidential informants are in accord with Police Department policy and constitutional commands, (c) the duty to disclose exculpatory evidence in criminal cases, (d) their duty not to undertake arrests in the absence of lawful grounds, (e) the duty to provide accurate and truthful information to the prosecutor's office, (f) the duty to report and disclose misconduct and illegal actions of other police officers, (g) the improper execution of search warrants, and in particular prohibitions on searches that go beyond those authorized by the warrant, and/or involve the destruction or theft of property or evidence, and (h) the fabrication of evidence against an accused to justify their illegal actions and conduct.

69. Defendant City of Philadelphia failed to properly sanction or discipline officers, who are aware of and conceal and/or aid and abet violations of constitutional rights of individuals by other Philadelphia Police Officers, thereby causing and encouraging Philadelphia police, including the Defendant officers in this case, to violate the rights of citizens such as the Plaintiff.

70. Defendant City of Philadelphia is deliberately indifferent to the need to train, supervise and discipline police officers. The Internal Affairs Division (IAD) of the Philadelphia Police Department (PPD) fails to provide an internal disciplinary

mechanism that imposes meaningful disciplinary and remedial actions in the

following respects:

    a. There are excessive and chronic delays in resolving disciplinary complaints;
    b. There is a lack of consistent, rational and meaningful disciplinary and
       remedial actions;
    c. There is a failure to effectively discipline substantial numbers of officers
who
       were found to have engaged in misconduct.
    d. The PPD's internal investigatory process has fallen below accepted practices
       and is arbitrary and inconsistent;
    e. The PPD discipline, as practiced, is incident based rather than progressive.
       Thus, repeat violators are not being penalized in proportion to the number of
       violations.
    f. The conduct of IAD investigations demonstrates that PPD internal affairs
       personnel are not adequately trained and supervised in the proper conduct of
       such investigations;
    g. A global analysis of IAD's investigatory procedures indicates a pattern of
       administrative conduct where the benefit of the doubt is given to the officer
       rather than the complainant;
    h. There are serious deficiencies in the quality of IAD investigations and the
       validity of the IAD findings and conclusions;
    i. The PPD lacks an effective early warning system to identify, track and
       monitor "problem" officers.
    j. Despite the fact that the Defendant officer had amassed an
       exceptionally large number of serious misconduct complaints, the officer
       stayed well below the radar of an early warning system;
    k. Despite numerous prior complaints against the Defendant officer,
       the PPD took no meaningful disciplinary or remedial actions;
    l. Despite numerous prior complaints against the Defendant officer,
       the PPD took no meaningful steps to more closely monitor, retrain and
       supervise the officer;
    m. IAD frequently fails to interview available eyewitnesses to incidents
       involving citizen complaints of misconduct. The interviews that are
       conducted by IAD are below acceptable standards of police practice and fail
       to address key issues in the cases; and
    n. IAD fails to acknowledge those cases where police officers fabricate
       evidence to justify the arrest and prosecution in the investigation of citizen
       complaints and fails to properly categorize the police officers' misconduct in
       those cases as an impermissible use of their police powers.

    71. The City of Philadelphia was deliberately indifferent to the need for more or

different training, supervision, investigation or discipline in the areas of:

    a. Use of information in obtaining probable cause;
    b. Exercise of police powers;
    c. Police officers with emotional or psychological problems;
    d. Police officers use of their status as police officers to have persons
       falsely arrested and maliciously prosecution and unlawfully searched
       or to achieve ends not reasonably related to their police duties; and
    e. False arrest, malicious prosecution and evidence planting of citizens.

72. The City of Philadelphia failed to properly sanction or discipline officers,

who are aware of and conceal and/or aid and abet violations of constitutional rights of

citizens by other police officers, thereby causing and encouraging police officers,

including Defendants Hulmes and Does in this case, to violate the rights of citizens

such as Plaintiff.

73. The City of Philadelphia failed to properly sanction or discipline officers and

acquiesced to the Defendant officers' unlawful conduct after becoming aware that

these particular officers engaged in the aforementioned conduct in cases dating back

to 2011 while concealing and/or aiding and abetting in the violations of constitutional

rights of citizens by this police officer, thereby causing and encouraging police

officers, including Defendant Hulmes and Does in this case, to violate the rights of

citizens such as Plaintiff.

74. There has been a longstanding history, which has been extensively

documented since the 1980s, of Philadelphia Police Officers engaging in rampant

illegal conduct in narcotics investigations. A non-exhaustive list of such conduct

includes:

    a. In the early 1980s, in the "One Squad Scandal" a group of Philadelphia
       narcotics Officers were convicted of selling drugs that they had stolen from
       dealers;
    b. During the decade between 1980-1989, a lieutenant and three officers from
       another drug unit, the "Five Squad" engaged in conduct including the theft
       of drugs and over $280,000.00 that resulted in federal convictions for, *inter*

*alia*, racketeering;

c. In or around February 1995, Philadelphia Police Officer John Baird and five other members of the 39th District were federally prosecuted and ultimately sentenced for violating the rights of, and stealing money from, over 40 Philadelphians. These Officers planted drugs on innocent individuals, conducted unreported raids, and stole from suspects;

d. In 1997, federal drug convictions were overturned as a result of a 1998 internal affairs finding that narcotics officer John Boucher was a potentially corrupt police officer;

e. In the last five years, numerous narcotics officers – including, as described *supra*, some and/or all of the Defendant Officers in this matter – have engaged in conduct causing them to have been removed from the narcotics assignments. In the last five years, as a result of a series of articles by Philadelphia Daily news reports known as "tainted Justice", Philadelphia Police Officers Jeffrey Cujdik, Richard Cujdik, Robert McDonnell, Thomas Tolstoy, Joseph Bologna and Thomas Dealer have all been assigned to either desk duty or non-narcotics related assignments. These officers engaged in raids of small convenience shops in Philadelphia in which they disabled surveillance systems to hide their conduct, which included theft of cash and groceries. Jeffrey Cujdik routinely alleged criminal behavior in search warrants involving confidential informant who subsequently denied having provided information or services on many of the cases in which Cujdik affirmed he had;

f. In May of 2013, Philadelphia Police Officer Jeffrey Walker was arrested and charged in the United States District Court for the Eastern District of Pennsylvania for acts including, *inter alia*, "by means of actual or threatened force or violence or fear of injury, immediate and future to the victim's person, and by use of firearm; and by use of his position as a Philadelphia Police Officer, did obtain personal property, cash and marijuana unlawfully . . ." The criminal complaint against Defendant Walker described flagrant manner in which he unwittingly disclosed to an FBI informant his practiced schemes to rob drug dealers of both drugs and money. He described the manner in which he would confiscate a large portion of a drug dealer's drugs for himself and report only a small portion of what he actually found in the police report. In addition, he described a scam to plant drugs in a drug dealer's car so that he could arrest the drug dealer, take the drug dealer's keys, and then use the dealer's keys to enter the drug dealer's apartment and steal money.

g. In September 2016 and over the course of 5 days in September and October 2016, former Narcotics Field Unit police officer Jeffrey Walker testified at deposition to matters regarding corruption in the Philadelphia Police Department, and in particular the Narcotics Units including the falsification of information and testimony by Narcotic police officers in order to "articulate" the probable cause basis when no probable cause actually exists. He testified that the supervisors either knew or acquiesced to this unlawful conduct.

75. Defendant City of Philadelphia continued to permit, acquiesce, encourage, tolerate, ratify and has been deliberately indifferent to the unconstitutional acts and omissions by the Defendant officers despite the aforementioned allegations, investigations and Court holdings for years.

76. The foregoing acts, omissions, systemic deficiencies and deliberate indifference to the danger or harm to citizens like the Plaintiff and the need for more or different training, investigation and discipline are policies and customs of the City of Philadelphia and have caused police officers, including Defendant Hulmes and Does in this case, to believe that he can violate the rights of citizens, with impunity, including the use of fraud and falsehood and to believe that such conduct would be honestly and properly investigated, all with the foreseeable result that officers are more likely to violate the constitutional rights of citizens.

77. The actions of all Defendants, acting under the color of state law and/or in concert or conspiracy with each other, deprived Plaintiff of his rights, privileges and immunities under the laws and Constitution of the United States, in particular, the rights to be secure in one's person and property and to be free from malicious prosecution.

78. Defendants, City of Philadelphia and Defendant Hulmes and Does acting in concert and conspiracy with each other, have by the aforementioned actions deprived Plaintiff of his constitutional and statutory rights.

79. By these actions, all Defendants have deprived Plaintiff of his rights secured by the Fourth and Fourteenth Amendments to the United States Constitution in violation of 42 U.S.C. § 1983.

**WHEREFORE**, Plaintiff, Michael McClary prays as follows:

a. The Court award compensatory damages to Plaintiff and against all Defendants, jointly and severally, in an amount to be determined at trial;

b. The Court award punitive damages to Plaintiff, and against all individual Defendants in their individual capacity, in an amount to be determined at trial, that will deter such conduct by Defendants in the future; and

c. For any and all other relief to which Plaintiff may be entitled.

## JURY DEMAND

88. Plaintiff demands a jury trial as to each Defendant and as to each count.

MICHAEL PILEGGI, ESQUIRE
303 Chestnut Street
Philadelphia, PA 19106
Counsel for Plaintiff